UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW E. KIMBROUGH, )<br>    *Plaintiff*, )<br>)<br>v. )<br>)<br>C.O. MALLOY, *in his individual capacity*, )<br>C.O. WRAY, *in his individual capacity*; and )<br>NURSE JANE DOE, *in her individual capacity*, )<br>    *Defendants*. | CASE NO. 3:24-CV-1572 (KAD)<br><br><br><br><br><br>JUNE 18, 2025 |

**INITIAL REVIEW ORDER**
**RE: AMENDED COMPLAINT (ECF NO. 21)**

Kari A. Dooley, United States District Judge

Plaintiff, Matthew E. Kimbrough ("Kimbrough"), was a prisoner in the custody of the Connecticut Department of Correction ("DOC") at the New Haven County Correctional Center ("New Haven CC") at the time he filed his original Complaint *pro se* pursuant to 42 U.S.C. § 1983. Though the initial Complaint was dismissed without prejudice under 28 U.S.C. § 1915A(b)(1) for failure to allege a plausible deliberate indifference claim, Plaintiff was given leave to amend. *See* Initial Review Order ("IRO"), ECF No. 20 at 8.

On January 21, 2025, Plaintiff filed an Amended Complaint, which asserts claims for: (1) failure to provide adequate medical care in violation of the Eighth Amendment against Defendants Correctional Officer Malloy ("Malloy") and infirmary Nurse Jane Doe; (2) deliberate indifference to a substantial risk of harm in violation of the Eighth Amendment against Defendant Malloy; and (3) retaliation in violation of the First Amendment against Defendant Correctional Officer Wray ("Wray"). *See generally* Am. Compl., ECF No. 21. Plaintiff asserts these claims against Defendants in their individual capacities, and seeks compensatory and punitive damages. *Id.* For the reasons set forth herein, the Amended Complaint is **DISMISSED in part**.

**Standard of Review**

Plaintiff is proceeding *in forma pauperis*, and he was a prisoner at the time he commenced this action. Therefore, the Court must review his Amended Complaint under both 28 U.S.C. §§ 1915A and 1915(e)(2)(B) and dismiss any portion thereof that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[1] Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007) (A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A *pro se* plaintiff is afforded liberal construction of his complaint. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). However, when a *pro se* plaintiff prepares a pleading with the help of an attorney, that pleading can no longer be entitled to liberal construction. *In re Fengling Liu*, 664 F.3d 367, 371 (2d Cir. 2011) (observing that undisclosed ghostwriting inappropriately affords a *pro se* party the benefit of liberal construction); *Koonce v. Gaylord Hosp., Inc.*, No. 13-CV-362, 2015 WL 4603414, at *4 n.2 (D. Conn. July 30, 2015) (declining to give liberal construction to a *pro se* plaintiff's complaint that was prepared by an

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). When Plaintiff's initial Complaint was filed, he was a prisoner in DOC custody. *See* Compl. at 8. However, when Plaintiff filed his Amended Complaint he listed what appears to be a residential address. *See* Am. Compl. at 10. Moreover, a search of Plaintiff's name on the DOC website returns no results. *See* https://www.ctinmateinfo.state.ct.us/resultsupv.asp (last visited June 18, 2025). Accordingly, the Court presumes that when Plaintiff filed his Amended Complaint he was no longer incarcerated. Nevertheless, Plaintiff "is still considered a prisoner for purposes of reviewing the Amended Complaint because he was incarcerated when he commenced this action." *Conquistador v. Cook*, No. 3:19-CV-1471, 2020 WL 4586513, at *1 n.1 (D. Conn. Aug. 10, 2020); *see, e.g.*, *Rogers v. New York City Police Dep't*, No. 12-CV-3042, 2012 WL 4863161, at *1 n.3 (E.D.N.Y. Oct. 12, 2012) (plaintiff who has been released from custody is still considered a prisoner under Section 1915A if he was incarcerated when he filed the case).

2

attorney). This is because if the court were to afford a plaintiff "the special solicitude generally afforded *pro se* litigants, [this] would allow [a plaintiff] the benefit of legal counsel while also subjecting him to a less stringent standard reserved for those litigants who are truly unrepresented." *Askins v. Metro. Transit Auth.*, No. 19-CV-4927, 2020 WL 1082423, at *4 (S.D.N.Y. Mar. 5, 2020).

Plaintiff initiated this action *pro se*, but he prepared his Amended Complaint with the help of an attorney at the Federal Pro Se Legal Assistance Program at the Quinnipiac University School of Law. See Am. Compl. at 1 n.1. Therefore, the Court cannot construe the Amended Complaint liberally and provide Plaintiff with the usual solicitude afforded to *pro se* litigants. *See Price v. City of New York*, No. 15-CV-5871, 2018 WL 3117507, at *5 n.5 (S.D.N.Y. June 25, 2018) (no special solicitude afforded to pleading prepared with the help of the New York Legal Assistance Group).

**Allegations[2]**

The Court has considered all of the allegations set forth in the Amended Complaint, and recites herein only those facts pertinent to its initial review.

On March 1, 2024, Plaintiff was at the Waterbury Superior Court for a scheduled court appearance while in the custody of the DOC. Am. Compl. at ¶ 8. During a meeting with his lawyer in the courthouse holding cell, he tripped and fell and hit his head against the cell toilet. *Id*. at ¶ 9. He lost consciousness "from the trauma to his head," and when he regained consciousness, he was "dizzy" and "in pain" and asked to be taken to the hospital. *Id*. at ¶¶ 10–

---

[2] Because "[t]he Second Circuit has long held that an amended complaint completely replaces the original complaint," the Court will not consider allegations from Plaintiff's original Complaint in considering the factual basis for his claims. *Jordan v. Chiaroo*, No. 3:24-CV-204, 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024) (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)) (holding that an amended complaint completely replaces the original complaint)); *see also Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint").

3

11. Plaintiff was taken to Waterbury Hospital, and he was discharged the same day. *Id*. at ¶¶ 11–12.

Defendant Malloy and Correctional Officer Maldinado[3] ("Officer Maldinado") arrived at Waterbury Hospital to transport Plaintiff to New Haven CC. *Id*. at ¶ 13. Defendant Malloy placed Plaintiff in "full-body restraints" by handcuffing his ankles and his hands together in front of his body and wrapping a long chain around his torso. *Id*. at ¶ 14. Defendant Malloy then placed Plaintiff in a wheelchair and wrapped the long chain around one of the legs of the wheelchair, so Plaintiff "was attached to or entangled with the wheelchair." *Id*. at ¶ 15. Plaintiff attempted to stand to enter the transport van, but "the chain wrapped around the wheelchair leg [and] inhibited his movement, caus[ing] [him] to pitch forward." *Id*. at ¶ 16. Because Plaintiff's hands and ankles were cuffed, he could not brace his fall, and he hit his head and shoulder on the van. *Id*. at ¶ 18. He "screamed from [the] extreme pain caused by the impact to his head and shoulder" and pleaded for Defendant Malloy and Officer Maldinado to take him back into Waterbury Hospital for medical assistance "because he believed his arm had been broken." *Id*. at ¶¶ 19–20. Defendant Malloy refused "and derided Plaintiff by calling him names[,] including 'baby,' 'old bastard,' and 'old mother f—er.'" *Id*. at ¶ 22. Plaintiff later learned that his shoulder had been dislocated. *Id*. at ¶ 21.

Officer Maldinado told Defendant Malloy to take Plaintiff back into Waterbury Hospital for treatment because Plaintiff had suffered a bad fall, but Defendant Malloy refused. *Id*. at ¶ 23. Defendant Malloy said, "[t]his older mother f—er ain't hurt. Just help me drag his ass into the van." *Id*. at ¶ 24. Defendant Malloy then roughly grabbed Plaintiff and attempted to force his "shackled and battered body into the van." *Id*. at ¶ 25. "Plaintiff continued to scream for help,

---

[3] Plaintiff did not name Correctional Officer Maldinado as a defendant in his Amended Complaint and does not include him as a defendant in his causes of action.

hoping a doctor or nurse might overhear and assist him." *Id*. at ¶ 26. Defendant Malloy grabbed "Plaintiff's injured arm, causing his dislocated shoulder to forcefully pop back into place, [and as a result, Plaintiff experienced] immense pain." *Id*. at ¶ 27. Next, Defendant Malloy grabbed Plaintiff by the rear of his pants and lifted him and forced him into the van, which "compressed [his] testicles and caused [him] severe pain." *Id*. at ¶ 28. Defendant Malloy laughed and got into the van. *Id*. at ¶ 29. "Plaintiff experienced severe pain in his head, groin, shoulder, and body." *Id*. at ¶ 30.

When Plaintiff arrived at New Haven CC, Officer Maldinado took him to the infirmary. *Id*. at ¶ 31. Officer Maldinado and Plaintiff described his injuries and the events causing his injuries to Nurse Jane Doe, but she refused to examine Plaintiff. *Id*. at ¶¶ 32–33. Nurse Jane Doe told Plaintiff that if he did not stop talking, she would "throw him out of the infirmary." *Id*. at ¶ 34.

Plaintiff and Officer Maldinado then left to go to the Lieutenant's office, and they ran into Defendant Wray on the way. *Id*. at ¶ 36. Plaintiff described Defendant Malloy's and Nurse Jane Doe's actions and told Defendant Wray that he and Officer Maldinado were going to file a report with the Lieutenant. *Id*. Defendant Wray pulled Officer Maldinado aside for a brief conversation and then demanded that Plaintiff give him the second extra sweater he was carrying. *Id*. at ¶¶ 37–39. Plaintiff explained to Defendant Wray that he had purchased the second sweater, but Defendant Wray threatened to issue him a disciplinary ticket and took the sweater from him. *Id*. at ¶¶ 40–41. Defendant Wray told Plaintiff not to "worry" about reporting Defendant Malloy and Nurse Jane Doe and ordered him to return to his cell without speaking to the Lieutenant. *Id*. at ¶¶ 42–43.

Plaintiff claims he suffered "severe emotional harm from Defendants' cruel treatment . . . [and] developed post-traumatic stress syndrome. . . ." *Id*. at ¶¶ 45–46.  Plaintiff filed a grievance complaining about the alleged events, but he was released from custody before Defendants could respond.  *Id*. at ¶¶ 45–47.  He seeks compensatory and punitive damages.  *Id*. at pp. 8–9.

**Discussion**

Plaintiff brings three causes of action in his Amended Complaint, which the Court will address in turn.

<u>Deliberate Indifference (Medical Needs)</u>

Plaintiff claims that Defendants Malloy and Nurse Jane Doe were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Am. Compl. at ¶¶ 47–55.  To state a claim for deliberate indifference to a serious medical need, Plaintiff must meet two requirements. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).  He must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'"  *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006), *abrogated in part on other grounds by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023)).

As to the objective component, courts must examine whether the alleged deprivation is "sufficiently serious."  *Spavone*, 719 F.3d at 138.  The condition must produce "death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citations omitted).  The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the

presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). When evaluating the seriousness of a medical condition, courts must consider the plaintiff's condition at the time he was seen by the defendants. *See El-Hanafi v. United States*, No. 13-CV-2072, 2015 WL 72804, at *15 (S.D.N.Y. Jan. 6, 2015).

Under the subjective prong of the deliberate indifference test, a prison official must have been actually aware of a substantial risk that the prisoner would suffer serious harm as a result of their actions or inactions. *Spavone*, 719 F.3d at 138. The defendants also must have been "subjectively reckless." *Id*. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983. *Id*. at 279–80. The Second Circuit has considered a delay in the provision of medical treatment to amount to deliberate indifference "where there was a needlessly prolonged delay, or where officials deliberately delayed the treatment as a form of punishment or ignored a life-threatening and fast-degenerating condition." *Burns v. Lupis*, No. 3:23-CV-23 (KAD), 2024 WL 1435631, at *4 (D. Conn. Apr. 3, 2024) (citations omitted).

In the Initial Review of Plaintiff's Complaint, the Court acknowledged that Plaintiff had "experienced severe pain when Defendant Malloy tried to force him into the van." IRO, ECF No. 20 at 7. The Court, however, dismissed Plaintiff's claim against Defendant Malloy for deliberate indifference to a serious medical need, in part because Plaintiff did "not allege how long the pain persisted, whether the rough treatment by Defendant Malloy caused further injury, or that his injuries were exacerbated by having to wait until he returned to [New Haven CC] for treatment."

*Id*. at 7–8. Further, the Court dismissed Plaintiff's claims against Nurse Jane Doe because he failed to allege her personal involvement. *Id*. at 4.

Through his Amended Complaint, Plaintiff asserts that his extremely painful dislocated shoulder, as well as the successive head trauma that occurred within hours of being treated at Waterbury Hospital, amount to an objectively sufficiently serious medical need. Am. Compl., ECF No. 21 at ¶¶ 48–50. And as to the subjective component, Plaintiff alleges that Maldinado told Malloy that Plaintiff needed medical attention and his suffering and dislocated shoulder were obviously severe, and that Nurse Doe refused to treat Plaintiff. *Id*. at ¶¶ 48–50. Put differently, Plaintiff claims that Defendant Malloy acted with deliberate indifference when he refused to take Plaintiff back inside Waterbury Hospital after his injury, and Nurse Jane Doe thereafter acted with deliberate indifference when refusing to treat Plaintiff for his injury at New Haven CC. Though the Amended Complaint does appear to adequately set forth Nurse Jane Doe's personal involvement, Plaintiff's allegations as to this claim otherwise remain insufficient.

As an initial matter, regarding the objective prong, the Amended Complaint does not allege that Plaintiff's condition was capable of causing death, degeneration or extreme chronic pain, nor does Plaintiff allege how long the pain from his shoulder persisted or what medical consequences ensued from the injury. Indeed, the Amended Complaint fails to allege that the pain Plaintiff experienced continued during his transport from Waterbury Hospital to New Haven CC, or whether—and for how long—his pain persisted when he arrived at New Haven CC. In fact, Plaintiff acknowledges that Defendant Malloy—albeit unintentionally—popped Plaintiff's dislocated shoulder back into place when forcing him into the transport van. *See* Am. Compl., ECF No. 21, at ¶ 27. Thus, to the extent extreme pain resulted from the dislocation of Plaintiff's shoulder, it follows that any such pain may have dissipated by the time Plaintiff arrived at New

8

Haven CC. In any event, Courts in this Circuit consistently find that pain associated with injuries such as a ligament tear are not sufficiently serious under the Eighth Amendment. *See, e.g.*, *Williamson v. Goord*, No. 02-CV-521, 2006 WL 1977438, at *19 n.120 (N.D.N.Y. July 11, 2006) (collecting cases where knee injuries such as a torn meniscus and ligament tears were not sufficiently serious); *Hughes v. Butt*, No. 17-CV-1151, 2019 WL 6970794, at *14 (N.D.N.Y. Sept. 17, 2019) (pain associated with lower back complaints not the sort of "extreme pain" that renders a medical need sufficiently serious), *report and recommendation adopted*, 2019 WL 6914776 (N.D.N.Y. Dec. 19, 2019). Moreover, while Plaintiff broadly claims that he suffered "compensable harm," he does not specify what "compensable harm" he suffered. *See, e.g.*, *Conquistador*, 2020 WL 4586513 at *4 (dismissing deliberate indifference claim involving untreated hemorrhoids where, *inter alia*, plaintiff failed to describe the effects the hemorrhoids had on his daily activities). For these reasons, the Court cannot find that the Amended Complaint adequately alleges a sufficiently serious injury.

Even assuming, however, that Plaintiff suffered a sufficiently serious injury, he has otherwise failed to allege that Defendants Malloy and Nurse Jane Doe were deliberately indifferent to any such need. Plaintiff has not alleged that either of these Defendants delayed care or failed to treat him as a form of punishment; ignored a life-threatening condition; or that their failure to treat him was egregious. *See Robbs v. McCrystal*, No. 3:18-CV-2150, 2019 WL 4933495, at *3 (D. Conn. Oct. 7, 2019) (dismissing deliberate indifference claim against a nurse where plaintiff had alleged no facts suggesting that a three-week delay in receiving x-ray reports or seeing the nurse caused him any harm, subjected him to a serious risk of harm, or was intended as punishment). Additionally, there is no inference that any further injury, pain, or physical harm resulted from the delay in the time it took for Plaintiff to be transported from Waterbury Hospital to New Haven

CC, or from Nurse Jane Doe's failure to treat Plaintiff.  *See Medina v. Sheehan*, No. 16-CV-1284, 2018 WL 7460016, at **6–7 (N.D.N.Y. Dec. 21, 2018) (defendant's decision not to seek emergency treatment for plaintiff's metacarpal fracture did not amount to deliberate indifference absent any evidence that the condition worsened from the twelve-hour delay in treatment), *report and recommendation adopted sub nom.*, 2019 WL 955004 (N.D.N.Y. Feb. 27, 2019).  And insofar as Plaintiff failed to allege that he suffered serious harm after the initial pain he experienced, he has likewise failed to allege that Defendants Malloy and/or Nurse Doe understood that Plaintiff would suffer serious harm because of their inactions.

In light of the foregoing, Plaintiff's deliberate indifference to medical needs claims against Defendants Malloy and Nurse Jane Doe is dismissed.

Deliberate Indifference (Health and Safety)

In Plaintiff's second cause of action, he claims that Defendant Malloy was deliberately indifferent to a serious risk of harm when he wrapped Plaintiff's full body restraints to the leg of his wheelchair.  Am. Compl., ECF No. 21 at ¶¶ 56–61.  To succeed on an Eighth Amendment claim for deliberate indifference to health and safety, Plaintiff must allege facts showing that: (1) he was confined under conditions that posed a substantial risk of serious harm; and (2) the prison official both knew that Plaintiff faced a substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996).

Determining a substantial risk of harm depends on the context of the alleged violation.  *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).  The question is thus "whether prison officials, acting with deliberate indifference, exposed a prisoner to a 'sufficiently substantial risk of serious damage to his future health . . .'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S.

10

25, 35 (1993)). As to the subjective element of the claim, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (quotations and citations omitted). A plaintiff must show more than mere negligence. *Id.* at 106. The prison official must have acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280.

Upon review of Plaintiff's initial Complaint, the Court dismissed this claim because Plaintiff had "alleged no facts suggesting that Defendant Malloy was aware that he had wrapped the restraint around the leg of the wheelchair or that he intended to do so," and therefore, Plaintiff's allegations amounted to, at most, negligence. IRO, ECF No. 20 at 5. Upon review of the Amended Complaint, the Court finds that Plaintiff has corrected these deficiencies.

The Amended Complaint alleges that Plaintiff was exposed to a substantial risk of serious harm, insofar as Defendant Malloy: (a) put Plaintiff in "full-body restraints" by handcuffing his ankles and hands together in front of his body and then wrapping a long chain around his torso; and (b) thereafter placed Plaintiff in a wheelchair and wrapped the long chain around one of the legs of the wheelchair, such that Plaintiff was entangled therewith. *See* Am. Compl., ECF No. 21 at ¶¶ 14–15. Later, when Plaintiff attempted to stand to enter the transport van, the entanglement predictably caused Plaintiff to fall and hit his head and shoulder. *Id.* at ¶¶ 16, 18. And because Plaintiff was in full-body restraints, he could not catch himself to the brace the fall. *Id.* at ¶ 18. After Plaintiff fell, he screamed from the extreme pain and pleaded for assistance. *Id.* at ¶¶ 19–20. Through these allegations, Plaintiff has plausibly claimed that Defendant Malloy should have

been aware that entangling Plaintiff in a wheelchair and placing him in full-body restraints would inhibit his mobility and expose him to a serious risk of harm, particularly when considering that Plaintiff was being picked up from the hospital for transport. *See Lucas v. Quiros*, No. 3:24-CV-1719, 2025 WL 1148576, at *5 (D. Conn. Apr. 18, 2025) (plaintiff adequately stated a deliberate indifference claim by alleging that he was required to put on an "orange jumpsuit without assistance and he was secured in a heavy restraint system without regard for his pain and serious [hip] injury").

Plaintiff also alleges that after his fall, Defendant Malloy grabbed his injured arm and roughly grabbed him by the rear of his pants to force his body into the van, which compressed his testicles and caused him severe pain. Am. Compl., ECF No. 21 at ¶¶ 25–30. Although Plaintiff does not allege that his severe pain continued after he arrived at New Haven CC, Defendant Malloy's alleged conduct—namely, grabbing an already-battered Plaintiff by his pants and injured arm and forcing him into the van—created a serious risk of harm to which Defendant Malloy was deliberately indifferent. *See Vallade v. Fischer*, No. 12-CV-231M, 2012 WL 4103864, at *3 (W.D.N.Y. Sept. 13, 2012) (allegations that plaintiff "was forced by the defendants to go up the stairs, while handcuffed and wearing shoes several sizes too big for him" stated a plausible deliberate indifference claim).

In light of the foregoing, the Court concludes that Plaintiff has stated a viable claim against Defendant Malloy for deliberate indifference to his health and safety.

<u>Third Cause of Action: First Amendment Retaliation</u>

Plaintiff's third cause of action is against Defendant Wray for retaliation in violation of the First Amendment. *See* Am. Compl., ECF No. 21 at ¶¶ 63–66. Plaintiff claims that after he told Defendant Wray about Defendant Malloy's and Nurse Jane Doe's actions and informed him that

he was going to report Defendants Malloy and Nurse Jane Doe to the Lieutenant, Defendant Wray demanded that Plaintiff give him the extra sweater he had purchased and threatened to issue him a disciplinary ticket. *Id*. at ¶¶ 36–41. Defendant Wray then told Plaintiff not to worry about reporting Defendants Malloy and Nurse Jane Doe, and ordered him to return to his cell. *Id*. at ¶¶ 42–43.

To state a First Amendment retaliation claim, Plaintiff must allege facts demonstrating: "(1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and citations omitted). "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CV-941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) ("prisoners may be required to tolerate more than average citizens, before alleged retaliatory action against them is considered adverse") (citation omitted). "The test is objective, and the plaintiff is not required to show that he was actually deterred." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). To allege causation, Plaintiff must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts; thus, conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

The Court assumes that Plaintiff's intention to file a report with the Lieutenant (presumably via a DOC grievance form) is a protected activity. *See Davis*, 320 F.3d at 352–53. As such, the Court need only consider whether Plaintiff has adequately alleged the last two elements of his purported First Amendment retaliation claim. He has not. First, Defendant Wray's alleged conduct—*i.e.*, telling Plaintiff to return to his cell—does not rise to the level of an "adverse action," because Plaintiff cannot credibly allege that such action would deter a person of ordinary firmness from later filing a grievance.[4] *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (finding plaintiff failed to state a claim for retaliation where he only brought claims of "retaliatory verbal abuse" and defendant only threatened to destroy plaintiff's filed grievances). And though the "adverse action" analysis is objective, the Court nonetheless observes that Plaintiff was not, in fact, deterred. *See* Am. Compl., ECF No. 21 at ¶ 45. Moreover, Plaintiff's assertions as to causation are wholly conclusory, and the Court cannot infer from the remaining allegations that Defendant Wray's instruction that Plaintiff return to his cell was motivated in any way by Plaintiff's stated intention to report Defendants Malloy and Nurse Jane Doe to the Lieutenant. *See Flaherty*, 713 F.2d at 13. Accordingly, Plaintiff's First Amendment retaliation claim fails.

**Conclusion**

For all of the foregoing reasons, Plaintiff's deliberate indifference to medical needs claim against Defendants Malloy and Nurse Jane Doe, as well as his First Amendment retaliation claim against Defendant Wray, are **DISMISSED**. The Amended Complaint may proceed as to

---

[4] Plaintiff also alleges that Defendant Wray took an "adverse action" by confiscated Plaintiff's sweater and threatening to discipline him under false pretenses. Though "the unauthorized destruction of a prisoner's property can form the basis for a retaliation claim," the allegations here are not sufficient to demonstrate retaliatory intent. *Chambers v. Johnpierre*, No. 3:14-CV-1802, 2015 WL 4751134, at *5 (D. Conn. Aug. 11, 2015) (citation omitted). Indeed, the Amended Complaint plainly fails to plausibly allege how Defendant Wray's confiscation of Plaintiff's sweater was motivated by Plaintiff's stated intention to file a report with the Lieutenant. *See Flaherty*, 713 F.2d at 13.

14

Plaintiff's deliberate indifference to health and safety claim against Defendant Malloy in his individual capacity.

Accordingly, the Court enters the following additional orders:

(1) **The Clerk of Court shall** verify the current work address for Defendant Malloy with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to Defendant Malloy at the address provided on or before **July 9, 2025**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing.  If Defendant Malloy fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Defendant Malloy in his individual capacity and Defendant Malloy shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk of Court shall** send Plaintiff a copy of this Order.

(3) **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendant Malloy shall file a response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If Defendant Malloy chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. Defendant Malloy may also include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 16, 2026**.  Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed on or before **February 16, 2026.**

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  **Failure to do so can result in the dismissal of the case**.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify the Defendant or the attorney for the Defendant of his new address.

(9) Plaintiff is encouraged to familiarize himself with the discovery process by reviewing Rules 26 through 37 of the Federal Rules of Civil Procedure.

**SO ORDERED** this 18th day of June 2025 at Bridgeport, Connecticut.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE